First case this morning is case number 4150381, Shoup v. Nelson for the appellant, Randall Walter, and for the appellee, Randall Mead. Mr. Walter, please proceed. Good morning, your honors. Mr. Mead. While this case was pending and then after the plaintiff presented its case, defense filed motions to dismiss the negligence trial, and it was twice denied by Judge Smith. And so at the end of the trial, in order to make the instructions consistent with those rulings, in order to avoid some confusion, let me say something about that, Mr. Mead and I have tried other cases where the jury received both premises liability instructions and negligence instructions, and it does cause some confusion, and we're supposed to prevent that. So that's why we dismissed that count, and when Judge Smith made his ruling, giving a directed verdict, I tried my best to pinpoint the reason for that decision, and I think on two occasions, and we have this in our brief, specifically had him say it isn't because this is a premise liability case and we're down to negligence. He said you haven't met the requirements of the negligence case, which means either he felt this was not a natural accumulation of ice, and or we hadn't met what we had approved under the negligence duty breach and injury. So on the natural accumulation issue, we obviously disagree. The ice that my client fell on suffered multiple fractures, wasn't put there by Mother Nature, it melted on a roof, came off a building that was gutterless, froze on the ground and stayed there until my client got there. And the cases we cite, Lapidus and Betts, I think make it clear that in Illinois, if the maintenance or the structure of a building creates a dangerous condition, the landowner has a responsibility for any damage that it creates. You don't have to approve a depression and there's going to be something different about all those buildings, but it just says that if it's because of the structure, and this structure, obviously the key issue, it didn't have any gutters. If we agree with you, does this create an absolute liability for landowners who don't have gutters in their building? I don't know if it's an absolute liability, but I think... Well, in what instance would it not be, if we agreed with your appeal here? Well, I guess it would be the same as a case where there's a hole in the gutter. I mean, why should somebody without gutters be in any position... Well, that's a gutter that is present and has a problem with it. Right. My question was, would we be creating an absolute liability that if you own a building, you have to put on gutters? No, but I think if you don't put on gutters and it creates ice where people are invited to be, you're going to be responsible. You should be responsible. Just as the owner who's got the faulty gutter doesn't repair it or doesn't take care of the ice that forms underneath it. In that case, there was a natural accumulation. That was one of the factors the court emphasized. Well... There was a depression in which the water gathered. But I don't think that's the issue in any of these cases. The facts are all different. There's a depression, there isn't a depression, there's this, there's that. But the key legal factor is, the ice is there not because Mother Nature put it there, but because the structure dropped it there. How do we even know that? In this case, wasn't, he said, as I'm falling, I see some water dripping on me? Wasn't that... He said that water dripped on him while he was there, just before he slipped and fell. And he didn't identify any ice, did he? Well, our answer to that is, what else could it possibly be? I mean... Well, you know... Circumstantial evidence, it's something... It's a little trip, counsel, don't they? I mean, I, you know, as he's standing there getting change, is... Can the answer, what else could it possibly be, possibly be sufficient to prove negligence? Well, here's why I think it should go to a jury. I think the jury's a fat question. He's not walking, he's not moving. He's standing there and his foot slides out from under him and he says it's real slippery. Slick and slippery. Well, you know, if the defendant wants to argue there was nothing there or it was oil, let them argue that. But if you look at every building in town... Isn't it your burden to establish the cause of his fall? Right. So what did you establish? We established it because the only reasonable... Well, I think the law is I don't have to prove that it's the only possible. It just has to be a reasonable outcome. That's what circumstantial evidence says. It's a conclusion that's reasonable. To me, not only is the conclusion to be slipped on ice reasonable, it's the only reasonable conclusion. And if the defense wants to argue otherwise, I think they have a right to do that, but it's still a fat question for the jury. You argue in your brief, your reply brief, you should similarly be responsible for having no gutter whatsoever. Isn't that arguing for absolute liability for having no gutter? Yeah, I hadn't thought... I mean, I'm quoting, that's what you say. I would think... Well, I didn't say absolute liability, but I think it should be at least the same as the first guy. Well, if he has no gutter and you claim that an accident occurred from it, and that's it. Yeah. You're saying he should be responsible. Well, somebody created a dangerous condition. It's not just because he doesn't have a gutter. I mean, if he'd slipped walking in the front door and there was no ice, it wouldn't have anything to do with the gutter. But here he slipped on ice that was dripped at that particular spot right in front of the vending machine. But why isn't that natural accumulation? We're going to talk a little physics. Mother Nature can't melt and freeze water at the same time. So what clearly happened here is heating that... There's a snowstorm. The temperature is hovering around 32 degrees. That roof is heated because that building is open for business 24 hours a day. It's melting water that's falling off that roof and landing in that spot in front of the vending machine. Mother Nature had nothing to do with it once that snow first came down. Also, Mother Nature had nothing to do with the fact that there's no gutter on the building. Mother Nature did not put that ice there. So that's why we'd say it's not a natural accumulation. Just like if it had snowed and it's around freezing, then at some point at 32 or 33 degrees, the snow is going to turn into wetness, just moisture, water, isn't it? Yeah. So then how do you answer Justice Turner's question? At some point, it snowed the day before and it was around freezing, we're going to have water on the sidewalk, aren't we? Yep. Is that a natural accumulation? If you heat water, your roof heats water above freezing and it's 25 degrees out. It comes down the gutter and rolls out on the sidewalk and freezes. That's not a natural accumulation. You've directed the water there. This building directed the water right in front of a vending machine where people were invited to come and buy a soda. So no, it's not a natural accumulation. What if the sidewalk were wet and there was no evidence that it had come down from the gutter? Would he still be liable? I don't think so. The water coming from the gutter and freezing is something you'd have to prove in this case? Yeah, I think that if you believe that it's not reasonable that it slipped on ice, then we lose. I think that's part of our – but again, my position is it's not only a reasonable conclusion. You argue again in your brief that if you can conceive – cannot conceive of any other reasonable conclusion under the circumstances described by the parties. I can conceive of lots of guys standing at 4 in the morning trying to get change out of his pocket and he trips himself. He's not even moving. His feet aren't even moving. Well, he's – How can that be enough? That's my whole point. Because if you list all the things you can think of, he's not moving his feet and somehow he trips. There's oil on the ground. Nothing happened. He slipped on ice coming from the gutter under those weather conditions. That's the most reasonable explanation. And that's what circumstantial evidence is. And that's what a jury should decide. A judge shouldn't decide that. A jury should decide that. I'm not sure I understand why you dismissed the premises count and why this doesn't sound like you're trying to make this into a premises count. I'm not. I mean, the only thing I remember, there's an ordinance in the town that says you're not supposed to discharge water in a way that makes it a public nuisance. This is water discharged right in front of a vending machine when water's freezing. To me, it's a public nuisance. That's prima facie evidence of negligence. And I thought that's why Judge Schmidt held the negligence count, both during the proceedings of the pretrial and then at the end of plaintiff's testimony. And to me, the thing to do at that time was focus on the negligence for a couple of reasons. One is it's consistent with the judge's ruling. And there was nothing new that was presented at the end of the trial. Same cases, same argument. And I didn't want to give two sets of instructions that aren't consistent with one another to a jury. That's why I asked him questions while he was giving that decision, to make sure he wasn't saying that this is because it's not a negligence case. He said that's not the reason. Well, what relief are you asking from us? Are you asking us to reverse the jury versus ruling, to reverse his order dismissing, granting your motion to dismiss? Well, we want to have this set back for trial so the jury can answer these questions we're talking about, these factual issues. And if you decide that this is not an appropriate case for negligence instruction, then we should go back and try it with a direction to do it under the premises liability instructions. Because the only reason we dismiss it is the judge made rulings. Well, you know, that explains your reason, but you dismissed it. Now, how do we go about and undo that, and what's our authority to do that? We're reviewing matters for error. What was the error Judge Schmidt made in granting your motion? In granting my motion? To dismiss. Oh. That you're asking us to undo. No, but it was based on his rulings. Well, you see, counsel, you seem to confuse the motivation with the motion. I understand your motivation. It's your motion. The judge granted it. Well, we cite cases where, I mean, the key thing is to this fundamental fairness to the parties. And if this court says you're stuck with your motion to dismiss even though you were led down that path by the judge who made multiple decisions during the case and the trial that made you do that, where's the fundamental fairness in that? I think you have the right to send it back and set it for retrial. If you want to give me directions, I want instructions to use, that's fine. Or have the case heard, give me a negligence, and then we'll come back again on that issue. But fundamental fairness means if you misread what the judge was thinking leading up to his ruling, then you've been denied fundamental fairness? That's why I asked those questions. I clearly did not misread what he said. That issue was raised twice. Same cases were cited. Mr. Mead raised the issue, said strike a negligence count. Schmitt, no. No. Grasp the burden. I say, Judge, I want to make clear what's going on here. You're not doing this because it's not a negligence case. Twice I asked him that, and twice he says no. You haven't met the burden of a negligence case, and that means he doesn't think it's a natural accumulation or he doesn't think the circumstantial evidence should go to the jury. And that's why I addressed those issues. But there was the premises liability action that was dismissed. Yes. Did I understand why I did it? Well, you dismissed the premises liability. What did the judge say about that count? Nothing. That was fine. He dismissed it, which is also consistent, I think, with the fact that he thought it should proceed under a negligence set of instructions. Well, a motion to dismiss is different. A motion to dismiss prior to trial is different from a judge's assessment of the case once all the evidence has been presented, isn't it? Our motion to dismiss was after the trial was over. I didn't want to set two contradictory sets of instructions to the jury. I've done that before. It creates a mess. Nor was the premises liability instruction consistent with his prior orders, which denied the request to get rid of the negligence count. The other thing I would say is if you were in Springfield, actually yesterday morning and looked at the building, they all had icicles or they all had water that had frozen coming out of gutters or they have ice underneath the icicles, and it's all because there's a change in temperature between the roofs of the buildings and air temperature and ground temperature. The defense in this case says, well, if it was above freezing, then there couldn't have been any ice there. Well, that's not true. We all know that once that ice is formed on the ground and it's 33 or 34 degrees out, it doesn't melt for an extended period of time, and plus it gets wet, it gets even more slippery. The defense seems to be arguing that this ordinance, which was passed some years after the building was built, doesn't seem to apply. I'm not sure of this argument. I will ask Mr. Mead. But was that argument made at the trial level, and what did Judge Schmitt say about that? I don't know that Judge Schmitt did anything other than to let our witness testify that that ordinance existed, and Mr. Mead has pointed out correctly that it doesn't require gutters. But it does say you're not supposed to discharge water in a way that's a public nuisance, and the reason we cite it is that's important for the negligence case because it's sort of like a speeding statute that you put in an automobile negligence case. It's prima facie evidence of negligence. Frankly, without that, I'm not sure we would have proceeded on the negligence claim at all, which admittedly is easier for the burden for the plaintiff. But you still don't want to give contrary instructions, and you still want to have instructions that are consistent with rulings that the judges made prior to trial and during the trial. That's all. Okay. You'll have rebuttal. Thank you. The last thing I want to say is I want you to notice that we're citing a well-known German physicist, and the defense is citing a cat. Thank you, counsel. Mr. Mead. Thank you. Our position, of course, is that the director's verdict was proper both factually and it was justified legally, and the appellate court can affirm on any basis it finds in the record. And the facts are basically, you know, without beating them to death, from the plaintiff's own testimony, he said it was above freezing at the time of the accident. He never saw any ice in the area where he fell. And as you pointed out, it's their burden of proof. It's not our burden to come up with explanations, but it's their burden of proof that that ice was there. Are you on appeal, even though you're utterly challenging the rulings of the court and asking us to consider some of the rulings as erroneous when we're evaluating your position that the court should be affirmed? Yes. Because you haven't – well, the reason I mention this on page four of your brief, you twice introduce your paragraphs by saying, the plaintiff guessed that water dripping from the laundromat's roof washed the salt away. Not that. When I make that comment, I point out the dubious nature of that testimony to begin with. Well, it's not helpful unless you are then in your brief arguing to us that this ruling was incorrect and here's why, and as we evaluate your position, we should – we can affirm on any basis fully developed by the record, such as that was the wrong ruling. Then that's the last we hear of it in your brief. You don't bother to argue the evidentiary aspect of this. The next paragraph is a – Ryan Crawford testified over-objection as the zoning administrator. Then you never go into that any further to say why that was improper. Okay. So what's the point of the over-objection, counsel? To point out that – I guess that that was preserved, if I had chosen to do that, to point out the dubious nature for you of that testimony. It points out nothing at all. Okay. I mean, it would be an interesting observation if, in part of your brief, you argued to us that these objections you made that were overruled were incorrectly overruled and that this evidence that was presented shouldn't have been properly considered. True. Go ahead. Nonetheless, you can still affirm on any basis in the record whether – Well, we can, but there was no development of the arguments that these things were improperly done. I would develop them further by saying that speculative testimony is not admissible, and that's why I pointed out that I object to his, quote-unquote, his literal word, guess, about that situation, and that I objected to, as the Court alluded to, the use of this rather vague statute, which is put forward by the plaintiff as prime evidence of negligence, and when I objected to that, that it was even credible to put in or any valid to put into evidence because I don't think it pertained whatsoever and therefore cannot be an underpinning for liability in this case. Are you arguing – I infer from your brief that you're arguing that the building was somehow grandfathered in under this ordinance, assuming the ordinance would otherwise apply because it was built before the ordinance was passed? Yes, and that was part of the objection is there was – the entire ordinance was not placed into evidence. There was a fragment of the – you know, it was a big building code, but there was no evidence offered by the plaintiff as to its applicability since the testimony was that the building was purchased prior to the enactment of this. So it would be, I suppose – Well, isn't this an argument? I'm grandfathering it in. Isn't this an argument you would have to develop? I have no idea about the nature of whether or not an ordinance like this would apply retrospectively or at least the buildings would be built beforehand so that they can't create a nuisance and you have to avoid – what about that? The answer is we don't know because the plaintiff didn't put that into the record to help us establish whether this law was pertinent or not. All that was put into the record was that one small fragment of the law that talked about gutters shall be maintained so as not to be a public nuisance when they discharge water or something to that effect. And the objection that I was really urging was that from the plain wording of the statute it says maintained, not placed or hung anew. You know, it's like if you've got them – I mean, we don't even know if it's a public safety concern or if it's a valuation of the building or are you degrading the property – a crappy building that you're not maintaining the gutters on. You know, we're given no understanding about that. Mr. Volker's argument seems to be premised primarily, I guess, cutting to the chase, on his claim that whatever it was that his client slipped on was apparently water dripping from the roof that he claims froze and what other possible explanation could there be? What's your response to that? Well, I don't know how – again, to adopt their simultaneously freezing and thawing argument, I don't know how you can have the plaintiff admitting in his testimony, which is the only testimony on the subject, that it was above freezing. So water's going to be flowing because it's above freezing, yet how can we have ice standing there? Now, Mr. Walters urges that the only logical conclusion from that is that it's melting from the heat of the building. But there was testimony on this that was unrebutted, and that was in Mr. Nelson's testimony in my case-in-chief, where he went into detail about how the building is insulated. The space beneath the actual roof would be the same temperature. It's not heated. It would be the same as the outside ambient air. So there's no heat source within the laundromat that's causing anything to melt and run off. So it's just, again, a failure of the plaintiff to prove their case actually. What about his claims that the plaintiff saw water dripping from the roof? What about that? What about that? I mean, we're sued for ice. He also testified that the pavement looked wet. He also testified that he never saw ice in that area, but for some reason it was slippery. Is ice a necessity in your judgment for him to prevail as opposed to just it's water dripped from the roof and it was wet where the machine was, where the plaintiff stood? I think it is. Because this isn't like water dripping off the cart so you have to bring them into that grocery store. It's specifically alleged that he slipped and fell on ice, and it's their obligation then to prove there was ice. That was the specific allegation? He slipped and fell on ice? Yes. What if they just said he slipped and fell on a wet surface? Would that be? Then I would have defended the case on another basis. Well, you know, we see signs on the highways as a bridge freezes before the roadway and all the rest of this, and right when we're at the point where it's maybe above freezing but not much, maybe the ground would be colder than the air or roof, and it might be water dripping from the roof that would freeze on the ground. Is that something a jury could conclude? I don't see how you could logically conclude that. Why not? Why could you? The ground is colder. Says who? Common experience. That's not my common experience. Is that your common experience? Mr. Walters is arguing the jury should be able to decide. Maybe it's his common experience. Maybe Justice Appleton's not his common experience. If there was any testimony about it, maybe that would have gone towards sustaining their burden of proof. But we're left to guess. Does hormones in milk cause birth defects? There's all this stuff. Some people think yes, some people think no. Common knowledge is a dangerous thing. You try a lot of these cases, Mr. Mead. I'm not sure what the – had this gone to the jury on the premises and negligence counts, what would have been the burden of the plaintiff to prove with regard to each in this very case? Well, that identifies the exact confusion that comes about when you allow each theory to go. And I don't think it's proper. And that was my main second point beyond factually not proving this. Legally, I think it was wrong of Judge Schmitt to indicate earlier. I think it was wrong for him not to dismiss the simple negligence count earlier. Because I think that under – the Supreme Court has told us time and again they're keeping the unnatural accumulation law. So if it's simple four-element negligence, that doesn't include the element of knowledge. It doesn't include the element of unnatural accumulation. And the Supreme Court has told us those have to be in there. What would it include? Give me – Just simple negligence? Yes. Facts that would – alleged duty, it's breach, proximate cause, and damages. So duty to keep the sidewalk ice-free would have to be his claim? Well, I think that their theory was the duty to hang gutters on a building that didn't require gutters. Is there any case in this state that imposes such a duty? I could not find one. I asked Mr. Walters my first question. If we agreed with him, would we be creating an absolute liability for building owners who don't put on gutters? In effect. You believe it would? Yeah. I don't know that it's – basically, you would be creating a duty, a common law duty, if you were to rule that way, that all buildings have gutters. And I don't think that that's – I couldn't find a case that spoke on that. There was one case that mentioned where gutters had been installed, if I remember right. But that was the one that was – I believe it was that Quincy case. It was also complicated with a known impression, if I'm keeping them straight in my mind. But I couldn't find one. I don't believe Mr. Walters could either, that imposes a duty to hang gutters. And that's why I believe they tried to make this health safety code serve that purpose for statutory reasons. I think, frankly, that the court, Judge Steigman, could really help the practitioners out by ruling, look, if you've got a snow and ice case, it needs to be pleaded and proven under the burden of proof in 125.02 of the IAPI, which has the six elements that are required in ice cases. So, one, I don't think this is the evidence-supported complaint of the case. Two, I think legally, I don't think it was supported, just on a simple basis.  I'm sorry? Would you speak up a bit? I'm sorry. Factually, I don't believe the case was supported, the plaintiff's case. And legally, I think it's not supported because they did choose to dismiss with prejudice their premises liability case. How did the dismissal with prejudice come about? What does the – who said with prejudice? If I remember correctly, I said, is this dismissal with prejudice? That's because, since I said the end of the case, it's supposed to be. And it was confirmed that it was a motion to dismiss with prejudice. You heard Mr. Walters' discussion about all that. I'm not sure I understand what procedure that was going on there or where the confusion arose from, as he pointed out, what the trial court indicated. What's your view of that? Well, my motion to dismiss had been denied. And I can't remember – it seems to me I revisited that at some other point and that was denied. So I understand, as the court pointed out, that that was his rationale in dismissing it. The legal effect of doing so, however, is a separate question. I mean, I understand why his tactic was to do that. But I don't agree that he gets a mulligan, so to speak, just because of his motivation for doing so. I think he stuck with that outcome. Had he not moved to dismiss, what would have happened? The case would have proceeded to? The case would have proceeded under two theories of recovery and the jury would have been instructed under two theories. And if I'd have lost, I'd have been here urging error because it was allowed to go under the negligence theory, presumably, if they came back liability under negligence but not under premises liability. So in your view, negligence was never a viable count under these facts? Simple negligence, yes. Negligence is always an element of premises liability. It's subsumed within that. So he would have still had to prove some form of negligence even in a premises liability. So what would be the difference in the two counts under these facts? The count that was dismissed, the simple negligence count, does not have the element that the defendant knew in the exercise of reasonable care should have known of both the defect and its danger and two, that the accumulation of ice and snow was unnatural. So those two items would be omitted from the simple negligence theory and instructions. You heard Mr. Boulder's argument that the circumstantial evidence in this case should be enough to let the matter go to the jury. Why isn't he correct? Well, circumstantial evidence, I mean, as a general statement, circumstantial evidence certainly can support sending a case to the jury if the logical inferences therefrom support or raise a question of fact that has to be decided. So he needs to point to what those logical inferences were. I disagree that there were any logical inferences that would support that. Well, he says there was water dripping from the building and it was slippery around, according to his client, around the pop machine. Why couldn't the jury infer that the water that had dripped from the roof froze? Because he also testified he observed no ice in that area. Well, did he testify to the exclusion of any ice or that he was uncertain about whether there was any ice under the water, maybe? If I recall correctly, he said I saw no ice either before or after I fell. What about the testimony about the EMT slipping as well? What's that worth? Little. Well? If there was some other condition there that was slippery, somebody had spilled antifreeze there from their car before, perhaps it would be as slippery for an EMT as it was for him. So it's your position he had to prove ice, not just wetness or some other condition, so as to meet his burden of proof with regard to this specific account? I agree that was his choice to plead and put on evidence under that theory. He pleaded ice? I believe so. Well, I'll ask him, but not just wetness, not just moist or rain or whatever? I believe he did. I don't have my file with me, but the record will tell us. But it did proceed as an ice case all along, so I sure hope he proved it that way. That's how you understood it to defend him? Yes, sir. I believe that's the way the court and the plaintiff perceived it as well. The key provision, as Mr. Wolters identifies in the brief, the key sentence from the ordinance is, roof water shall not be discharged in a manner that creates a public nuisance. Yes. That doesn't say anything about ice. True. So how could a jury view that? If it's an ice case, what was Judge Smith's explanation for letting in the ordinance at all? I don't know. Did he explain it? You don't recall? Not that I recall. Any other questions? I see none. Thank you very much. Thank you. Rebuttal? Thank you. I'm not a physics major, Judge, but ice is water. It's water that's frozen, and the danger is when it freezes, it's more dangerous. I agree with Mr. Mead. Our claim is ice. I don't think there would have been a claim if it was just water, just because it would have been so open and obvious that there would have been no claim. It has focused on the ice issue. What's stunning to me, though, is that there seems to be some question about how this ice was created. This is such a common occurrence. It happened 10 million times in this city in the last three or four days. There's ice forming everywhere because gutters miss water, or it comes out the bottom of the gutter, and it gets an air temperature or a ground temperature that's colder, and it freezes. But people are slipping all over the place. But aren't you required at some point to establish that ice was present as far as I slip, therefore it must be present. I don't have a photograph, and that's why I have to rely on circumstantial evidence, but I'm stunned that anybody would say this is not a reasonable conclusion having spent time in central Illinois. If I've fallen on ice, and I look back and I've seen that was ice. Yep. But if that ice came out of a drain that your neighbor had taken from his deck and put it on the sidewalk. That's a different question as to where it had come from. Your client never identified it as ice, did he? He says, I think it's ice because it was slippery and I went down. He can't say, I mean, he honestly said, and it's just like, thanks for being honest. But by our questions, it's not only reasonable to conclude it's ice under those circumstances, it's a snowstorm, heated building, no gutter, ice on the ground. I mean, as I said in my brief and I stick by it, what else could it have been? I mean, it's not just a reasonable conclusion. Why couldn't it have just been a wet surface? Well, because a wet surface. Because he'd walked on a wet surface. Well, he'd walked on a wet surface, didn't have any problems. And when he got to this, he said it was extremely slick. And water on the sidewalk is not anywhere near as slick as ice is. It's a whole different dimension. Not near as slick, but slick. Could have been slick enough to trip him. If it had been water instead of ice, would they be liable? You know, I don't think so. And here's something else that's important. They gave you photographs. So here's our best explanation of what happened. It snows, it's below freezing, there's snow on the road. He takes all the snow off the sidewalk and off the parking lot as best he can. The business is open 24 hours a day. His testimony that it's not warmer on the road is just not credible. We know it's warmer. So it melts, comes down and lands in front of there. And it freezes because the air temperature, the ground temperature, is lower than it is on the road. Otherwise, it wouldn't have melted. And we see it all the time. So it forms a patch of ice. Now, when he gets there, all the lights are on, the parking lot's wet, the sidewalk's wet, it all looks wet. Even the ice looks wet because it is covered with water. So he doesn't even see it. If it was water, he'd have been unnoticed because he parked there, said everything looks wet, goes over to get a soda. But he doesn't hit water when he's there. He gets the ice that's come off the roof that doesn't have a gutter. And he goes down. If a jury doesn't believe that, we lose. But they ought to hear the story. I mean, it's to us the most reasonable explanation of what happened to this guy. And on the ordinance, we're not arguing the ordinance requires that gutters be put on the building. Although the public policy issue here, if you decide the other way, everybody's going to go out and take their gutters down instead of worry about maintaining them because they don't have any liability because they don't have a gutter. He should not be any better off than somebody who has a defective gutter. So I don't think it's absolute liability. But if he doesn't have a gutter and he allows ice to form where people are invited in a place where he makes money off sales, yes, he should be responsible for their injuries. Why did you need the negligence count? Why was this not just a straight premises action as it sounds to me that you're raising here? Well, because in our mind, we had a violation of an ordinance that brings it under the negligence issue. We cite the IPI-60, I think, where it goes into that issue. Violation of an ordinance is prima facie evidence of negligence. To us, we'd rather go under negligence because it's an easier verdict. And I still think we have to prove it's not an actual accumulation, but we don't have to prove knowledge. So if he would have got on the stand and said, you know, geez, I understand, but I didn't know the ice was there. When I was there at midnight, it wasn't there. Then we got a problem. We don't have that problem under a negligence theory. But in this case, because of the judge's rulings, we got to the end of the trial with these two theories existing. If he had thrown out negligence, we'd have been stuck with the premises liability, but that's not what the judge did. So in order to make the instructions consistent with the rulings, we did what we thought was appropriate, and we cite cases that tell us that's exactly what we're supposed to do. Had this been just the premises matter with the ordinance and the last sentence that you cite, the roof waters are not to be discharged in a matter that creates public nuisance, would that still be probative of anything? I think what Mr. Mead said earlier was correct. I mean, negligence is subsumed into the premises liability, so I think it would still be relevant. And the judge made a ruling. The gentleman that handles the city ordinances came to testify. He was not allowed to give any opinion about whether the ordinance had been violated. He just said, yeah, this is the ordinance, and it was in effect at the time. That's all his testimony was. What did that mean, it's in effect at the time? As you heard, I was asking this question about this suggestion that somehow the building had been grandfathered because it was built before the ordinance. Well, I think... Did Judge Schmidt ever address that? No. He just allowed the testimony. And my understanding of the ordinance would be that he didn't have to go change the billing at all, but he couldn't allow water to run off in a way that's a public nuisance just because the building predated the ordinance. He's still violating the ordinance. Thank you, Mr. Mead. Thank you very much. Okay, thank you, Mr. Mead. The case is submitted. The court stands in recess.